[No. 34565.   Department Two.   February 25, 1960.]

P. J. TAGGARES *et al., Appellants v.* FRED WAGENER, JR., *Respondent.*[1]

[1]Reported in 349 P. (2d) 601.

*Boose & Garrison, Gavin, Robinson & Kendrick,* and *Robert R. Redman,* for appellants.

*McGregor & Halstead,* for respondent.

FINLEY, J.—This action was initiated by the appellant as a suit on a promissory note executed by the respondent in satisfaction of a pre-existing indebtedness. The appellant sought to recover the face value of the note at the time of the trial, $3,242.56, plus accumulated interest and reasonable attorney's fees. The respondent replied, admitting execution of the note, but claiming that the note was executed as part of a marketing agreement whereby the respondent was to grow potatoes on a certain fifteen-acre tract rented to him by one Rawlings; that, under this agreement, the appellant was to purchase the potatoes, paying $33.00 per ton for No. 1 potatoes and the market price for No. 2 potatoes and culls; that the amount of the note was to be set off against the contract price for the potatoes; and that, due to the fault of

the appellant, the potatoes, though ready to be harvested and delivered to the appellant, were destroyed by frost. The respondent also claimed that, under the alleged marketing agreement, the appellant was obligated to reimburse the respondent for the costs of spraying and fertilizing, incidental to the growing of the potato crop.

A jury trial resulted in a verdict for the respondent for $871.00. The appellant moved for judgment, notwithstanding the verdict, or for a new trial. The motion for judgment, n.o.v., was denied unconditionally, and the motion for a new trial was denied upon the respondent's agreement that the amount of the verdict might be reduced to $207.47. A judgment in favor of the respondent was entered for this latter amount from which this appeal followed.

The appellant has assigned error to the denial of his motions for a judgment, notwithstanding the verdict, and for a new trial. In substance, the appellant claims (1) that the respondent offered no evidence that the loss of the potato crop was due to any fault of the appellant; and (2) that, in any event, the amount of the judgment in favor of the respondent is unsustained by any evidence.

Upon reading the briefs and hearing the oral arguments of counsel for the parties, it has become apparent to us that there is no real dispute that the promissory note was executed and delivered as a part of a marketing agreement, whereby the respondent was to grow potatoes and the appellant was to purchase them. Further, it is clear that the respondent did, in fact, grow fifteen acres of potatoes and commenced harvesting them; but, that after harvesting the potatoes from some two-and-one-half to three acres of the fifteen-acre tract, the respondent ceased harvesting, with the result that the potatoes still in the ground were ultimately lost due to frost.

Appellant claims that the reason for the loss was that one Pete Taggares, Jr., appellant's son, promised the respondent that he would harvest the remaining potatoes, but failed to do so. Appellant further asserts that there is no evidence that his son was acting as his agent in making

this promise, and, therefore, he, the appellant, is not liable for the loss. However, as we view the matter, the absence of evidence of an agency relationship between the appellant and his son is beside the point. The record contains substantial evidence that, prior to the conversation between the respondent and Pete Taggares, Jr., the appellant had requested the respondent to cease harvesting, because the market price the appellant could get upon resale had dropped below the price he was to pay the respondent under the marketing agreement; and further, that the appellant, himself, had agreed to come in and harvest the remaining potatoes with a bulk-digger to eliminate picking charges. By instruction No. 10, to which no exception was taken by the appellant, the jury was told:

"If you find the plaintiff did request delay of delivery, and also find that the failure to dig the potatoes was thereafter due to the fault of the plaintiff, then you must find for the defendant as to the cross-complaint and ascertain the amount of damages, if any."

Aside from the fact that for failure to take an exception this instruction became the law of the case insofar as the appellant is concerned (*Braack v. Bailey* (1948), 32 Wn. (2d) 60, 200 P. (2d) 525, and cases cited therein), we are of the opinion that, in any event, the instruction is a correct statement of the law under RCW 63.04.230, which provides, in part:

"(b) Where delivery has been delayed through the fault of either buyer or seller the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault."

Under the evidence, the jury, quite properly, was entitled to believe that the respondent ceased harvesting at the request of the appellant; that, in reliance on a promise by the appellant to harvest the balance of the potatoes, respondent left the remainder of the crop in the ground where it was ultimately destroyed by frost. Therefore, the appellant's claim that the loss of the potatoes was not due to any fault of his is without merit.

■ We turn now to the appellant's second contention: that, in any event, a judgment for $207.47 in the respondent's favor is unsustained by any evidence. This figure was determined by the trial judge upon consideration of the appellant's motion for a new trial, after the jury had returned a verdict for the respondent in a larger amount. Thus, in reviewing this facet of the case, we have the benefit of the trial judge's calculations as reproduced in his written memorandum opinion. He calculated as follows:

"Cross-complainant:

| | | |
|---|---|---|
| 15 acres x 20 tons per Acre | | 300 tons gross |
| 180 tons [No. 1 grade] at $33.00 per ton | $5,940.00 | |
| 120 tons [No. 2 and cull] at | | |
| $6.00 per ton...................... | 720.00 | |
| | | |
| Gross Revenue ...................... | $6,660.00 | |
| Less $10.00 per ton cost.................. | 3,000.00 | |
| | | |
| Net damage .......................... | $3,660.00 | |
| Less $3,318.23 [amount of the note plus interest] and $94.50 [paid to the respondent's lessor by appellant in partial discharge of respondent's rental obligation] and $39.80 [credited to the respondent's open account with the appellant]...... | 3,452.53 | |
| | | |
| Net recovery of the cross complainant............ | $207.47." | |

It is apparent that the trial judge first estimated the expected yield of the fifteen acres on which the potatoes were grown and then applied, as the measure of net damages, the contract price, less the respondent's production expenses. The rule of law applied is in accord with *Stevenson v. Puget Sound Vegetable Growers' Ass'n* (1933), 172 Wash. 196, 19 P. (2d) 925, and is not attacked by the appellant. Rather, the appellant attacks the factual assumption that each of the fifteen acres would have produced an average of twenty tons, in the face of certain evidence which he introduced tending to show that, in fact, the two-and-one-half to three acres that were actually harvested produced only eight tons per acre. However, this evidence was contradicted by the respondent, who produced evidence that the acreage upon which harvesting occurred produced the same amount

as it was estimated the unharvested acreage would have produced. Since, again, the trier of fact was entitled to believe the respondent's evidence and to disbelieve the appellant's evidence, this attack of the appellant, also, must fail.

■ Finally, the appellant calls our attention to the rental agreement between the respondent and his lessor. Under that agreement, the respondent was to pay as rent to his lessor, Rawlings, twenty-two and one-half tons of potatoes, or one and one-half tons per each of the fifteen acres. The appellant urges, therefore, that the judgment in favor of the respondent should be reduced by the value of the potatoes, which, but for the loss, would have been delivered to Rawlings as rent. However, the record contains uncontradicted evidence that the rental obligation was settled for a cash payment of $337.50. Of this amount, $243.00 was paid by the respondent, and the remaining $94.50 was paid by the appellant in exchange for the lessor's share of the potatoes actually harvested before harvesting ceased. A reference to the above-quoted calculations indicates that the trial judge credited the appellant with the $94.50 paid by him. Inasmuch as the respondent's obligation with respect to the unharvested acreage was discharged upon payment of $243.00 in settlement, we fail to see why the respondent should not be entitled to the contract price for the entire expected yield of this acreage, just as if he had never been obligated to deliver a portion of that yield to his lessor.

Therefore, we conclude that the judgment of the trial court should be affirmed in all respects. It is so ordered.

MALLERY, ROSELLINI, FOSTER, and HUNTER, JJ., concur.